11-1346-cv
*Bison Capital Corporation v. ATP Oil & Gas Corporation*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of April, two thousand twelve.

Present:
> ROBERT D. SACK,
> DEBRA ANN LIVINGSTON,
> GERARD E. LYNCH,
> > *Circuit Judges.*

_____

BISON CAPITAL CORPORATION,

> *Plaintiff-Appellant*,

> v.                                              No. 11-1346-cv

ATP OIL & GAS CORPORATION,

> *Defendant-Appellee.*

_____

For Plaintiff-Appellant:     THOMAS R. JULIN (Jeffrey W. Gutchess and Patricia Acosta, *on the brief*), Hunton & Williams LLP, Miami, Fla.

For Defendant-Appellee:     DAVID A. WALTON (Brit T. Brown and Benjamin A. Escobar, Jr., *on the brief*), Bernie Maynard & Parsons LLP, Houston, Tex.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stein, *J.*).

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Bison Capital Corporation ("Bison") appeals from a March 21, 2011 judgment of the United States District Court for the Southern District of New York (Stein, *J.*), entering judgment, following a four-day bench trial, in favor of Bison on its claims of breach of contract in the amount of $1.65 million plus prejudgment interest. On appeal, Bison argues that the district court erred in finding that the contract between Bison and Defendant-Appellee ATP Oil & Gas Corporation ("ATP") only entitled Bison to percentage fees on transactions consummated before April 1, 2005, and in finding that Bison's percentage fee should be calculated as a percentage of funds newly made available in the particular transaction at issue. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On appeal from a judgment of the district court entered after a bench trial, we "review the court's findings of fact for clear error and its conclusions of law *de novo*." *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 890 (2d Cir. 2011) (internal quotation marks omitted). Under New York law, which governs the contract between Bison and ATP (the "Agreement"), "[t]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000). This is a question of law for the court. *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). "An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context

of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted). We have held that "[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous," *id.* (internal quotation marks omitted), and that "[w]here there is such extrinsic evidence, the meaning of the ambiguous contract is a question of fact for the factfinder," *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009).

At the start, Bison argues that the district court erred in relying on extrinsic evidence in interpreting the agreement because the provisions at issue are unambiguous. With respect to Paragraph 7, which establishes the term of the Agreement, Bison argues that so long as ATP entered into a Capital Transaction with a funding source listed in Exhibit A within twelve months following the April 1, 2004 termination, the Agreement unambiguously provides for payment of Bison's fees on any future Capital Transaction consummated with that funding source. Bison argues that any other reading would render the language providing that "no termination of Bison's engagement hereunder shall affect the Company's obligation to pay fees and expenses to the extent provided for herein" superfluous.

We disagree. The Agreement provides that "Bison shall be entitled to the fees set forth in Paragraph 2 . . . in the event the Company consummates or enters into an agreement or arrangement providing for a Capital Transaction . . . at any time within twelve months following termination of this Agreement." As the magistrate judge noted in recommending that ATP's motion to dismiss the complaint be denied, Paragraph 7 is susceptible of two interpretations: it may "reasonably be interpreted . . . to merely establish a triggering event after which Bison becomes entitled to its

3

continuing compensation under Paragraph 2," or it may be interpreted as establishing that Bison is only entitled to fees for Capital Transactions occurring before April 1, 2005. Under either interpretation, Bison's right to receive percentage fees survives the termination of the Agreement. Accordingly, we find no error in the district court's resort to extrinsic evidence to interpret Paragraph 7 of the Agreement.

Bison similarly argues that Paragraph 2 of the Agreement, which sets forth the formula for calculation of Bison's percentage fee on each Capital Transaction, is unambiguous. Paragraph 2 provides, in relevant part, as follows:

> 2. <u>Compensation</u>. In connection with this engagement, ATP shall pay to Bison:
> . . .
> (b) for each Capital Transaction through which funds are made available to or for the benefit of ATP, its affiliates or lenders as a result of arrangements made or to be made by investment or commercial banking firms approached by Bison on behalf of ATP, as listed in Exhibit A . . . cash fees equal to one per cent (1%) of the aggregate Value of such funds . . . .

"Value" is defined in Paragraph 3 as "the aggregate value of all cash, securities, joint venture interests or any contract rights or other property or assets involved in the Transaction"; the Agreement further specifies that "Value shall be deemed to include the face amount of any indebtedness for borrowed money or other financial instruments." Bison contends that because Paragraph 2 employs a defined term, "Value," which has a broad definition encompassing the entire face amount of any indebtedness and the aggregate value of all cash and securities involved in a given Transaction, Paragraph 2 unambiguously requires that Bison's percentage fee be calculated based on the face value of ATP's Capital Transactions with Credit Suisse, without regard to whether funds in a given Capital Transaction are "made available" to ATP for the first time in that transaction.

4

We again disagree. As the district court noted, although Paragraph 2 employs the defined term "Value," it specifies that Bison's compensation is to be calculated as the "aggregate Value of such funds," referring to "funds [] made available" in a given Capital Transaction. Paragraph 2 may therefore reasonably be interpreted to mean that the percentage fee is to be calculated based only on the aggregate value of funds *newly made available* in a Capital Transaction. Because we conclude that Paragraph 2 is ambiguous, the district court did not err in considering extrinsic evidence on this issue.

We have considered Bison's remaining arguments regarding the alleged errors in the district court's consideration of the extrinsic evidence and, after conducting an independent review of the record, conclude that the district court did not commit clear error in its findings. Accordingly, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk